UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UPF, INC.,

        Plaintiff,

                                                Case No. 05-CV-74929
vs.                                            HON. GEORGE CARAM STEEH

MOTOMAN, INC.,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (#3) TO THE EXTENT THE PARTIES' RESPECTIVE CLAIM AND COUNTERCLAIM ARE DISMISSED WITHOUT PREJUDICE

Defendant Motoman, Inc. moves to stay these proceedings and compel mediation and arbitration. A hearing was held on February 28, 2006. For the reasons set forth below, Motoman's motion will be GRANTED to the extent that UPF, Inc.'s breach of contract claim will be DISMISSED, without prejudice, pursuant to the parties' agreement to arbitrate, and Motoman's counterclaim will be DISMISSED, without prejudice, with the court declining to exercise supplemental jurisdiction over the counterclaim.

### I. Background

Plaintiff UPF, Inc., a Michigan corporation with its principal place of business in Michigan, filed a complaint in Michigan's Genesee County Circuit Court on December 5, 2005 alleging breach of contract against Motoman, a Delaware corporation with its principal place of business in Ohio. UPF alleges that it agreed to pay Motoman $180,000.00 for an automated paint system capable of painting multiple truck frames, that it has paid over $150,000.00 to Motoman, but that Motoman has breached the contract by failing to provide

a working system.  Motoman removed the action to federal court on December 29, 2005 based on diversity jurisdiction, filed a breach of contract counterclaim seeking $43,120.25 in remaining payments, and filed the instant motion to stay these proceedings premised on a contractual right to mediate and arbitrate UPF's claim.

The record shows that Motoman transmitted a "Budgetary Quotation" ("Quote") to UPF on May 17, 2004, quoting a $166,816.00 purchase price plus $7,515.00 in options, including 40 hours of on-sight work, for a total quote of $174,331.00.  The Quote also stated: "Terms: 25% Down, 75% Net 30 Days Motoman Standard Terms and Conditions Apply."  In response, UPF transmitted Purchase Order ("PO") No. 5237 to Motoman on May 21, 2004 for $180,814.00, which included 80 hours of on-sight work.  PO No. 5237 also set forth the terms: "25% Down, 75% Net 30 Days after Installation," but made no reference to "Motoman Standard Terms and Conditions."  On May 26, 2004, Motoman faxed UPF a "Receipt of Purchase Order # 5237" ("FAX"), informing UPF that PO No. 5237 was "currently under review," and reflecting a Total Purchase Price of $180,814.00.  The May 26, 2004 Fax also included the terms "25% Down upon Receipt of Purchase Order 75% Due Net 30 days from Shipment Subject to Financial Approval[.]   Motoman's Standard Terms and Conditions apply to this Order."  On May 28, 2004, Motoman sent UPF an "Invoice" for the 25% down payment of $45,203.50.

Motoman CFO Steve Barhorst attests that Motoman has a standard business practice of retaining copies of only the front page of invoices, and that the back page of all invoices, including the May 28, 2004 Invoice sent to UPF, read in part:

**MOTOMAN, INC.**
**STANDARD TERMS AND CONDITIONS OF SALE**

**1. GENERAL:**
**a.**  Any sale of products by MOTOMAN, Inc. (hereinafter called "Seller") is

governed exclusively by these Standard Terms and Conditions of Sale (hereinafter called "Standard Terms") which, unless otherwise agreed by an authorized officer of Seller in writing, shall be a part of the sales contract and shall supercede any inconsistent terms on Buyer's purchase order or any subsequent document.  Buyer's (1) signature on Seller's order confirmation form; or (2) failure to object to these terms in Seller's proposal or order confirmation form within fourteen (14) days of the date thereof, or (3) acceptance of Seller's products or services shall constitute Buyer's acceptance of these Standard Terms.

**10.  GOVERNING LAW:**
The validity, construction, and interpretation of all documents relating to this sale, and rights and parties hereto, shall be governed by the laws of the State of Ohio, United States of America.

**11.  MEDIATION/ARBITRATION:**
Any controversy arising out of the interpretation and/or performance of this contract, except Buyer's nonpayment of the sums due seller, shall first be submitted to mediation in Dayton, Ohio, to a single mediator acceptable to the parties.  If the dispute is not resolved by mediation, it shall then be submitted to arbitration in Dayton, Ohio according to the Commercial Arbitration Rules of the American Arbitration Association before three (3) arbitrators unless the parties mutually agree on a lesser number.

Motoman's Exhibit 5.  From June through September 2005, Motoman sent UPF ten additional POs.  This lawsuit was filed on December 7, 2005.

## II.  Motion to Stay and Compel Mediation/Arbitration

Motoman moves to stay these proceedings pending mediation and arbitration pursuant to the "Standard Terms and Conditions of Sale" as set forth on the back of the POs sent to UPF.  Motoman agrees to stay adjudication of its counterclaim here pending the results of an arbitration of UPF's claim, conceding that its counterclaim is expressly excluded from mediation and arbitration under paragraph 11.

UPF's breach of contract claim involves an automated paint system sold in interstate commerce.  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, applies in diversity cases involving interstate commerce.  Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 272, 282 (1995).  Generally applicable state law contract defenses may be applied in

determining whether the parties agreed to arbitrate. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686 (1996).

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). What states may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.

Allied-Bruce, 513 U.S. at 281. In deciding a motion to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue, examining the contract language in light of the strong federal policy favoring arbitration. Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). Any doubts as to the parties' intentions should be resolved in favor of arbitration. Id.

UPF does not dispute that the language of paragraph 11 of the "Standard Terms and Conditions of Sale" provides for mediation and arbitration, but instead argues that none of the "Standard Terms and Conditions of Sale" became part of its contract with Motoman because: (1) the parties' contract was created when UPF accepted Motoman's offer on May 21, 2004 by transmitting PO No. 5237 to Motoman; (2) the actual terms of the "Standard Terms and Conditions of Sale" were, at best, first included on the back of Motoman's May 28, 2004 Invoice, and therefore the terms did not become part of the May 21, 2006 contract, and; (3) Motoman CEO Barhorst admits that he does not have a copy of the back of the May 28, 2004 Invoice, leaving a question of fact as to whether UPF ever received a copy of the "Standard Terms and Conditions of Sale." UPF argues that Motoman's May 17, 2004 Quote and May 26, 2004 FAX stating that "Motoman Standard Terms and Conditions Apply" are inconsequential because the actual terms were not set forth in the Quote or FAX.

"It is a well-accepted principle that a federal court in a diversity case must apply the conflict of law rules of the state in which it sits." Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993). In Michigan, a contractual choice of law provision governs unless: (1) the chosen state has no substantial connection to the parties or the transaction; or (2) application of the law of the chosen forum would be contrary to a fundamental policy of Michigan, with Michigan having a materially greater interest in the determination of the issue. Id. at 361 (applying 1 Restatement (Second) of Conflicts of Laws § 187 (1971)). General contract principles of both Michigan and Ohio law require a "meeting of the minds" on all material terms to form a contract. See Kamalnath v. Mercy Memorial Hospital Corp., 194 Mich. App. 543, 548, 487 N.W.2d 499 (1992) (quoting Stanton v. Dachille, 186 Mich. App. 247, 256, 463 N.W.2d 479 (1990)); Nilavar v. Osborn, 137 Ohio App.3d 469, 484, 738 N.E.2d 1271 (2000) (citing McSweeney v. Jackson, 117 Ohio App.3d 623, 631, 691 N.E.2d 303 (1996)). The term "meeting of the minds" refers to the parties' mutual assent, which is determined from objective evidence such as the parties' express words and visible acts as opposed to their subjective states of mind. See Kamalnath, 194 Mich. App. at 548-549 (quoting Stanton, 186 Mich. App. at 256, and citing Goldman v. Century Ins. Co., 354 Mich. 528, 534, 93 N.W.2d 240 (1958)); Nilavar, 137 Ohio App.3d at 484 (citing McSweeney, 117 Ohio App.3d at 631).

Contrary to UPF's argument, the parties' express words and visible acts demonstrate that UPF and Motoman first mutually assented to the material terms of their contract on May 28, 2004 when Motoman sent its first invoice to UPF. UPF's May 21, 2004 PO No. 5237 for $180,814.00 exceeded Motoman's initial Quote by $6,483.00, and added the additional financing term of "75% Net 30 Days *after Installation.*" As of May 21, 2003, the parties had yet to reach a "meeting of the minds" on three basic terms: price, number of

hours of service, and credit terms. Allied-Bruce, 513 U.S. at 281. Motoman's May 26, 2004 FAX constituted a conditional acceptance of UPF's offer by informing UPF that PO No. 5237 was "currently under review," and that UPF's credit terms were "Subject to Financial Approval." Under either Michigan or Ohio law, mutual assent was not achieved, and a contract was not formed, until Motoman first sent UPF the May 28, 2004 Invoice. Kamalnath, 194 Mich. App. at 548-549; Nilavar, 137 Ohio App.3d at 484.

UPF's reliance on Challenge Machinery Co. v. Mattison Machine Works, 138 Mich. App. 15, 359 N.W.2d 232 (1984) is misplaced as the instant circumstances do not pose a "Battle of the Forms" containing conflicting provisions. See id. at 22-23 (finding that conflicting provisions in seller's quote and buyer's purchase order regarding the existence of warranties cancelled each other out and did not become a part of the contract). Under both Michigan and Ohio law, the parties' conduct is sufficient to establish a contract. See Kamalnath, 194 Mich. App. at 548-549; Nilavar, 137 Ohio App.3d at 484; M.C.L. § 440.2207(3); O.R.C. § 1302.10(C). UPF was notified as early as May 17, 2004 that "Motoman Standard Terms and Conditions Apply," and UPF was provided with those terms and conditions in eleven separate Invoices from May 28, 2004 through September 12, 2005. See Motoman's Exhibits A, 1-7. The conditional nature of Motoman's acceptance was set forth in paragraph 1a. of the "Standard Terms and Conditions of Sale."

UPF's reliance on American Parts Co. v. American Arbitration Association, 8 Mich. App. 156, 154 N.W.2d 5 (1968) is also misplaced. American Parts involved the issues of whether the terms set forth in a seller's confirmation form accurately reflected the parties' previous oral agreement, and if so, whether the seller's confirmation form contained additional terms which were not binding upon the buyer. Id. at 161, 173. The American Parts court distinguished between a written confirmation of a prior oral agreement and, as

6

here, a written form used to conditionally accept a written purchase order:

> The printed confirmation of order form of the seller in this case appears to be designed for use in accepting a buyer's written purchase order, as well as a written confirmation of a prior oral agreement. <u>The conditional assent language may well be appropriate in the purchase order situation and may enable the seller in such a case to impose its contract terms on a buyer who accepts delivery.</u> But not necessarily; for example, suppose the buyer precedes or responds to such a writing with one stating that shipment by the seller means that the seller has accepted the buyer's terms, all of them.

<u>American Parts</u>, 8 Mich. App. at 174 (emphasis added).  Motoman's May 28, 2004 Invoice was used here to accept UPF's written May 21, 2004 PO No. 5237 using appropriate conditional assent language; UPF did not precede or respond to Motoman's May 28, 2004 Invoice, or subsequent invoices, with its own written terms.  Nor did UPF seek another agreement in writing, object to any invoice, or reject acceptance of Motoman's products or services.  <u>See</u> Motoman's Exhibit 5, ¶ 1a.

Motoman CFO Barhorst's attestation that the back page of all of Motoman's invoices included the "Standard Terms and Conditions of Sale" constitutes evidence that Motoman's May 28, 2004 Invoice and subsequent invoices contained these same terms and conditions.  <u>See</u> Fed. R. Evid. 406.  UPF does not deny receiving any of Motoman's invoices.  UPF's argument that Motoman *may have* faxed only the front pages of the invoices to UPF is not factually supported in the record.

UPF and Motoman expressly agreed to arbitrate UPF's claims.  In light of the parties' agreement and the strong federal policy favoring arbitration, Motoman is entitled to dismissal of UPF's breach of contract claim in favor of arbitration.  <u>Allied-Bruce</u>, 513 U.S. at 281; <u>Stout</u>, 228 F.3d at 714.

A federal court has supplemental jurisdiction over a compulsory counterclaim which arises from the same transaction or occurrence as the opposing party's claim.  <u>Stewart v.

7

Dollar Federal Savings and Loan Association, 523 F.Supp. 218, 224 (S.D. Ohio 1981) (citing Fed. R. Civ. P. 13(b) and City of Cleveland v. Cleveland Electric Illuminating Co., 570 F.2d 123, 126-27 (6th Cir. 1978)).  A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it enjoyed original jurisdiction.  28 U.S.C. § 1367(c)(3).  Motoman's Counsel conceded at the hearing its willingness to arbitrate its less than $75,000.00 counterclaim with UPF's primary claim.  Under these circumstances, the court declines to exercise supplemental jurisdiction over Motoman's counterclaim, and will dismiss the counterclaim to allow Motoman to seek an appropriate forum.

### III. Conclusion

Defendant Motoman's motion is hereby GRANTED to the extent plaintiff UPF's claims are hereby DISMISSED without prejudice pursuant to the parties' agreement to arbitrate UPF's claims.  Motoman's counterclaims are also hereby DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

SO ORDERED.

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

Dated: May 2, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 2, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee  
Secretary/Deputy Clerk